[Civ. No. 20112. First Dist., Div. Two. Apr. 18, 1962.]

AMERICAN CAN COMPANY et al., Plaintiffs and Appellants, v. CITY AND COUNTY OF SAN FRANCISCO, Defendant and Respondent.

Sedgwick, Detert, Moran & Arnold and Scott Conley for Plaintiffs and Appellants.

Dion R. Holm, Thomas M. O'Connor, City Attorneys, and R. J. Reynolds, Deputy City Attorney, for Defendant and Respondent.

SHOEMAKER, J.—On September 17, 1959, Elmo Piombo, while driving a truck owned by the American Can Co., collided with a Municipal Railway tower truck which was parked in the intersection of 16th Street and Potrero Avenue in San Francisco. As a result of this collision, John Murphy and Harry Jones, two employees of the City and County of San Francisco, were thrown from the tower truck and injured. Murphy and Jones thereupon instituted a negligence action against Piombo and the American Can Co. to recover damages for the injuries sustained by them. Piombo and American Can Co. filed a cross-complaint naming the City and County of San Francisco as cross-defendant and asserting that the accident was primarily caused by the negligence of the cross-defendant, or its agents, servants and employees. The cross-defendant then filed a demurrer and a motion to strike the cross-complaint. After the matter had been argued and briefed

by the parties, the trial court granted the motion to strike the cross-complaint.[1]

Piombo and American Can Co. did not appeal from said order, and acquiescing therein, commenced a separate action against the City and County of San Francisco. The complaint set forth the same acts of negligence previously enumerated in the cross-complaint, and prayed for a declaration that defendant City and County of San Francisco was under a duty to indemnify plaintiffs for any judgment or costs which might be assessed against them in the action brought by Murphy and Jones. Defendant moved to strike the complaint on the ground that it attempted indirectly to impose on defendant a greater liability to its employees, Murphy and Jones, than that provided by the California Workmen's Compensation Act; and further, that plaintiffs had failed to allege any contractual right to indemnity as required by law. The trial court granted defendant's motion, and plaintiffs now appeal from the order striking their complaint. ■ (Such an order is appealable as a final determination of the rights of the parties in an action or proceeding. *Honan* v. *Title Insurance etc. Co.* (1935) 9 Cal.App.2d 675, 677 [50 P.2d 1068]; *Witczak* v. *Johnson* (1956) 146 Cal.App.2d 599 [303 P.2d 1091].)

Appellants contend that their complaint set forth a cause of action on two distinct theories: (1) implied indemnity on the ground that respondent's negligence was the primary cause of the accident and the resulting injuries to Murphy and Jones; and (2) liability of respondent pursuant to Government Code, section 53051, for injuries resulting from the dangerous or defective condition of public property.

In order to dispose of appellants' contention that the complaint states a cause of action for "implied indemnity," it becomes necessary to review certain developments in the California law regarding contribution among joint tortfeasors. ■ Prior to 1957, when the Legislature enacted sections

---

[1]The court based its decision on the recent case of *Weissman* v. *Lakewood Water & Power Co.* (1959) 173 Cal.App.2d 652 [343 P.2d 776], where the court held that a cross-complaint for indemnity between codefendants in a personal injury action had properly been dismissed. The court reasoned that the declaratory relief issues would be extraneous to the main case and might confuse the jury (p. 657). It was further suggested that the cross-complainant could bring a separate action against his codefendant and thus resolve the issue of indemnity (p. 658). Disapproved by Supreme Court in *Roylance* v. *Doelger* (1962) 57 Cal.2d 255 [19 Cal.Rptr. 7, 368 P.2d 535].

875-880 of the Code of Civil Procedure, the normal common-law rule, although subject to certain exceptions, was that one joint tortfeasor could not seek contribution or indemnity from another. Pursuant to Code of Civil Procedure, section 875, a limited right to contribution became available "Where a money judgment has been rendered jointly against two or more defendants in a tort action . . . ." Where this section is not applicable, however, the general common law prevails and the party seeking contribution must bring himself within one of the exceptions to the rule. In the case at bar, appellants are clearly not seeking contribution pursuant to Code of Civil Procedure, section 875, since no money judgment has been rendered jointly against appellants and respondent. Indeed, appellants themselves expressly negate any such assumption.[2]

The question thus presented is whether the allegations of the complaint are sufficient to bring appellants within one of the recognized exceptions to the common-law rule against contribution. Appellants assert that a right to contribution or indemnity may exist independent of any express contract between the parties and may arise from the fact that one party is guilty of "active" negligence, while the other is merely "passively" negligent. It is appellants' position that such a situation gives rise to an implied obligation on the part of the actively negligent party to indemnify his fellow tortfeasor for all damages which may be assessed against him. In support of this contention, appellants rely upon *City & County of San Francisco* v. *Ho Sing* (1958) 51 Cal.2d 127 [230 P.2d 802], and *Alisal Sanitary Dist.* v. *Kennedy* (1960) 180 Cal.App.2d 69 [4 Cal.Rptr. 379].

Appellants tell us that the *Ho Sing* and *Alisal* cases require the application of the "implied indemnity" doctrine to their complaint. Respondent, on the other hand, urges that these two decisions are readily distinguishable from the in-

---

[2]It would seem evident that section 875 would never be applicable in situations where the injured party is the employee of one of two tortfeasors and the employer has secured workmen's compensation insurance. Since the employee's "exclusive remedy" against his employer is the right to recover compensation (see Lab. Code, § 3601), he may not bring a tort action against the employer, and the two tortfeasors will never be held jointly liable as required by Code of Civil Procedure, section 875. (See *Witt* v. *Jackson* (1961) 57 Cal.2d 57, 70 [17 Cal.Rptr. 369, 366 P.2d 641], where the court indicated that a negligent third party could obtain contribution pursuant to Code Civ. Proc., § 875, only in the *absence* of workmen's compensation.)

stant case because they involved special permit and contractual relationships existing between the two tortfeasors, whereas appellants' complaint, at best, sets forth a speculative tort relationship arising out of an alleged distinction between passive and active negligence. Respondent further argues that even if the *Alisal* and *Ho Sing* cases can be said to lend support to such a theory, an employer such as itself who has obtained workmen's compensation insurance cannot be made indirectly liable to its employees by way of an indemnity action in the absence of an express or implied contract to indemnify the third party tortfeasor. As a final argument, respondent directs this court's attention to Labor Code, section 3864, which provides that if an employee recovers judgment against a third party, the employer, if he has secured compensation insurance, shall have no liability to reimburse or hold such third person harmless on such judgment in the absence of a *written agreement* so to do executed prior to the injury. Respondent concedes that this statute did not become effective until September 18, 1959, the day after the accident occurred, but asserts that it ought to be applied restrospectively because it is merely remedial in effect and disturbs no substantive or vested right of appellants. We do not agree with this argument. Any liability of respondent to appellants arose on September 17, 1959, when the accident occurred. If, on that date, the decisional law of California was such as to allow a right of indemnity between the parties, the retrospective application of a statute altering respondent's liability would clearly have a material effect on the substantive rights of the parties. In any event, the rule is well established that a statute is presumed to be prospective only in operation and will not be applied retroactively unless such intention clearly appears from the language of the statute itself. (*Krause* v. *Rarity* (1930) 210 Cal. 644, 655 [293 P. 62, 77 A.L.R. 1327].) Section 3864 contains no language which would justify the conclusion that it was intended to operate retrospectively.

An examination of the California decisions which have allowed indemnity between tortfeasors rather clearly reveals, however, that appellants have failed to state a cause of action. Respondent would appear to be correct in contending that the cases relied upon by appellants do not support the conclusion that the distinction between "active" and "passive" negligence is of itself a sufficient basis for an implied duty to in-

demnify. Both the *Ho Sing* and the *Alisal* cases, as respondent properly points out, involved special relationships between the parties. In the former case, the court based its holding on the special licensor- licensee relationship between the parties, and on the well established rule of other jurisdictions that a municipality has a right of action over against the landowner whose negligent act has caused the city to become liable to a member of the general public. In the *Alisal* case, the plaintiff had hired the defendants to perform certain tasks in a skillful, expert and careful manner. Defendants failed to comply with these contractual obligations and thereby caused plaintiff to incur liability to a third party. Although the *Alisal* case does make some reference to the distinction between primary and secondary negligence, it is apparent to us that appellants' complaint is not framed in such a manner as to meet the requirements there set forth. ▮ The court, in quoting from *Builders Supply Co.* v. *McCabe* (1951) 366 Pa. 322, 325-326, 328 [77 A.2d 368], stated, at page 75: " 'The right of *indemnity* rests upon a difference between the primary and secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his part, has been compelled by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. The difference between primary and secondary liability is not based on a difference in *degrees* of negligence or on any doctrine of *comparative* negligence—a doctrine which, indeed, is not recognized by the common law; . . . It depends on a difference in the *character* or *kind* of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person. . . .' . . . 'But the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible.' " An examination of appellants' complaint clearly reveals that the distinction between passive and active negligence upon which they rely consists in reality of comparative negligence or a difference in degrees of negligence. Indemnity based

upon any such theory was specifically disapproved in the above-quoted passage. Appellants' complaint does not allege that respondent owed a different kind of obligation to the injured employees or that respondent's breach of duty was of a different nature than appellants'. The complaint, when viewed most favorably, merely asserts that respondent's tower truck was improperly parked; that respondent's buses were located so as to conceal the truck from view; and that respondent failed to provide a flagman or barricades to direct traffic around the truck. Even if it can be assumed that these omissions on respondent's part were far more negligent than appellant driver's act of proceeding into an intersection despite the fact that his view was impaired by a trolley bus, there is a complete absence of any facts showing that respondent's duty to the injured employees was any greater than appellants', or that there was any special relationship between respondent and appellants which would give rise to a duty of indemnity. On the contrary, the facts alleged in the complaint merely reveal that the concurring negligence of the two parties resulted in certain injuries to Murphy and Jones. Appellants' complaint thus falls squarely within the common-law rule against contribution or indemnity between joint tort-feasors. Under these circumstances, it becomes unnecessary to discuss respondent's contention that the *Alisal* and *Ho Sing* cases are inapplicable to an employer who has complied with the requirements of the California Workmen's Compensation Law. Appellants have failed to allege any facts which would bring them within the exception set forth in those decisions.

Appellants' final contention is that the complaint sets forth a cause of action against respondent under Government Code, section 53051. This argument may be disposed of summarily. Section 53051 provides that ''A local agency is liable for injuries to persons and property resulting from the dangerous or defective condition of public property'' in all cases, where, having notice or knowledge of the condition, those persons having authority to remedy it or to protect the public against it fail, within a reasonable time, to do so. It is apparently appellants' position that the damages recoverable under this section are not limited to direct injury to a claimant's person or property but may be extended to such indirect damages as appellants may ultimately be compelled to pay in defense of the action brought by Murphy and Jones. The

section, as thus interpreted by appellants, is in the nature of an express provision by the Legislature that cities and other local agencies are to be held liable as indemnitors of joint tortfeasors under circumstances where the common law would impose no such duty on the part of an ordinary defendant. This interpretation, while interesting, is of no merit whatever. Prior to the enactment of the Public Liability Act of 1923, from which this section is derived, municipalities and other local agencies were not liable for the negligent acts or omissions of their officers and employees. (*Douglass* v. *City of Los Angeles* (1935) 5 Cal.2d 123, 127 [53 P.2d 353].) The 1923 legislation altered this situation and imposed liability upon the local agencies for the tortious acts of their employees. The purpose of the act was not to impose additional burdens on a governmental agency as compared to any other defendant in a tort action, but was to remove the immunity which had previously absolved the local agencies of any liability whatever. Since, as above noted, appellants' complaint states no cause of action for indemnity under the common law, it is difficult to conceive how Government Code, section 53051, can be of any assistance to appellants. █ Our courts have consistently held that the statute is to be strictly construed against the claimant. (*Seybert* v. *City of Imperial* (1958) 162 Cal.App.2d 209, 212 [327 P.2d 560]; *Hoel* v. *City of Los Angeles* (1955) 136 Cal.App.2d 295, 303-304 [288 P.2d 989].) In our opinion, the statute was not intended to impose a liability for indemnity where none would exist under the common law.

Order affirmed.

Kaufman, P. J., and Agee, J., concurred.