[Civ. No. 11271. Third Dist. Mar. 20, 1967.]

AEROJET GENERAL CORPORATION, Cross-complainant and Respondent, v. D. ZELINSKY & SONS, Cross-defendant and Appellant.

McGregor, Bullen & Erich, McGregor, Bullen & McKone and Donald McGregor for Cross-defendant and Appellant.

Johnson, Davies & Greve, Clair H. Greve and William A. Sitton for Cross-complainant and Respondent.

FRIEDMAN, J.—This appeal is the outgrowth of an industrial accident which occurred in August 1956, resulting in the death of Otto Woolen and Edward Dauer. Both were employed as painters by D. Zelinsky & Sons, an independent painting contractor. Heirs of the two employees brought separate wrongful death actions against Aerojet General Corporation, at whose plant the painting was taking place. In each case a jury awarded damages against Aerojet, but each judg-

ment was reversed for errors in jury instruction. (*Woolen* v. *Aerojet General Corp.*, 57 Cal.2d 407 [20 Cal.Rptr. 12, 369 P.2d 708]; *Dauer* v. *Aerojet General Corp.*, 224 Cal.App.2d 175 [36 Cal.Rptr. 356].) Before the retrial of either lawsuit, Aerojet entered into settlements with the plaintiffs. In the present proceeding Aerojet seeks indemnity against Zelinsky for the amount of the settlements plus its litigation expenses. The trial court sustained Aerojet's claim and Zelinsky appeals.

The circumstances of the accident have been described in the Supreme Court's decision in *Woolen* v. *Aerojet General Corp., supra,* and this court's decision in *Dauer* v. *Aerojet General Corp., supra,* and it will be necessary to state them only briefly here. Aerojet hired Zelinsky to paint the interior of two liquid fuel storage tanks with a highly volatile paint. An explosion occurrrd inside one of the tanks while the work was in progress, fatally injuring the two employees. There was evidence that the paint contained volatile, inflammable solvents; that the explosion would not have occurred had blowers been supplied to create air circulation and had explosion-proof electrical equipment been used. The contract between Aerojet and Zelinsky contained no explicit safety provisions, but simply required Zelinsky to furnish "all plant, labor, equipment and material" to accomplish the work. Zelinsky had full control of the painting operations and Aerojet supplied no direction or supervision. The evidence did indicate that Aerojet itself had been in active charge of an earlier and separate project involving use of the same paint and on that job had supplied blowers and explosion-proof lighting.

The *Woolen* suit went to trial in January 1959. The Supreme Court's reversal of the judgment occurred in March 1962. The court sustained the trial court's denial of Aerojet's motion for judgment notwithstanding the verdict, holding that there was sufficient evidence to support a judgment against Aerojet under the rule described in section 413, Restatement of Torts, this rule being the same as California law;[1] held that the trial court had erred in instructing the

---

[1] At the time of the Supreme Court's decision (March 1962) section 413, Restatement of Torts, declared: "One who employs an independent contractor to do work which the employer should recognize as necessarily creating, during its progress, conditions containing an unreasonable risk of bodily harm to others unless special precautions are taken, is subject to liability for bodily harm caused to them by the absence of such precautions, if the employer (a) fails to provide in the contract that the

jury regarding the duty of an invitor (Aerojet) to keep its premises reasonably safe for its invitees, since such an instruction failed to include the elements necessary to liability under Restatement section 413; held that error had also occurred in instructions on an "employer's" duty to comply with industrial safety orders since, under the circumstances, Aerojet had no obligation to assure compliance with safety orders by Zelinsky, an independent contractor.

The *Dauer* case was tried in January 1962, several months before the Supreme Court's decision in *Woolen*. Approximately the same errors characterized the *Dauer* trial, and this court reversed the plaintiffs' judgment in conformity with the Supreme Court's decision in the *Woolen* case.

Aerojet's claim for reimbursement is based upon the doctrine of implied indemnity. ▆ When applicable, the doctrine permits one of two tortfeasors to shift the entire loss to the other when, without active fault on the former's part, he has been compelled by reason of some legal obligation to pay damages occasioned by the immediate negligence of the latter. (*Ralke Co.* v. *Esquire Bldg. Maintenance Co.*, 246 Cal.App. 2d 141, 144 [54 Cal.Rptr. 556]; *Pierce* v. *Turner*, 205 Cal. App.2d 264, 267-268 [23 Cal.Rptr. 115]; *American Can Co.* v. *San Francisco*, 202 Cal.App.2d 520, 525 [21 Cal.Rptr. 33].) ▆ Implied indemnification may rest upon equitable considerations, impelled by a contrast between the secondary, passive role of one tortfeasor and the primary, active role of the other. (*Cahill Bros., Inc.* v. *Clementina Co.*, 208 Cal.App. 2d 367, 381-382 [25 Cal.Rptr. 301]; *San Francisco Unified School Dist.* v. *California Bldg. etc. Co.*, 162 Cal.App.2d 434, 445 [328 P.2d 785].) It may also rest upon a contractual relationship between indemnitor and indemnitee, predicated upon the former's breach of an implied contract to perform the work carefully and to discharge foreseeable damages resulting from that breach. (*Ryan Stevedoring Co.* v. *Pan-Atlantic S.S. Corp.*, 350 U.S. 124, 131 [100 L.Ed. 133, 76 S.Ct. 232]; *Weyerhaeuser S.S. Co.* v. *Nacirema Operating Co.*, 355 U.S. 563, 567 [2 L.Ed.2d 491, 78 S.Ct. 438]; *Great Western Furniture Co.* v. *Porter Corp.*, 238 Cal.App.2d 502, 517 [48 Cal.Rptr. 76]; *Cahill Bros., Inc.* v. *Clementina Co.*,

---

contractor shall take such precautions (as to which see § 416), or (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions." The Restatement Second of Torts, published in 1965, made several changes in the section which are not of direct consequence here.

*supra,* 208 Cal.App.2d at pp. 376-380; *Alisal Sanitary Dist.* v. *Kennedy,* 180 Cal.App.2d 69, 79 [4 Cal.Rptr. 379].)

■ Whichever is the theoretical premise, equitable or implied contractual, the indemnity claimant's active participation in the wrong will usually preclude his recovery. (*Goldman* v. *Ecco-Phoenix Elec. Corp.,* 62 Cal.2d 40, 44 [41 Cal. Rptr. 73, 396 P.2d 377], citing *Cahill Bros., Inc.* v. *Clementina Co., supra,* 208 Cal.App.2d at p. 382; *Great Western Furniture Co.* v. *Porter Corp., supra,* 238 Cal.App.2d at p. 517; see Annot., Construction Contractor—Indemnity, 97 A.L.R.2d 616.)

■ Labor Code section 3864, adopted in 1959, prohibits indemnity recovery by a third party against the employer of the injured person absent an express indemnification agreement. The 1959 statute does not apply retroactively to this 1956 accident. (*Vegetable Oil Products Co.* v. *Superior Court,* 213 Cal.App.2d 252, 258 [28 Cal.Rptr. 555] : *American Can Co.* v. *San Francisco, supra,* 202 Cal.App.2d at p. 524.)

Aerojet's indemnification proceeding was tried without a jury. Bulk of the evidence consisted of the reporters' transcripts of the *Woolen* and *Dauer* trials. The trial court found that Zelinsky had exclusive control and supervision of the painting operation ; that prior to the execution of the contract both parties were aware that the paint was highly volatile and explosive and that precautions would be necessary ; that it was reasonable that Aerojet would rely on the skill and qualifications of Zelinsky as an expert; that Aerojet performed all the terms and conditions of the contract; that Zelinsky negligently and in breach of the contract failed to provide its employees a reasonably safe place to work and failed to furnish the necessary labor, plant, equipment, material and supplies to perform the work in a reasonably safe and workmanlike manner ; that the explosion and the deaths of Woolen and Dauer resulted solely and exclusively from the negligence of Zelinsky and from Zelinsky's breach of its contract with Aerojet; that Zelinsky had stipulated to the propriety and reasonableness of the settlements and to the reasonableness of the litigation expenses incurred by Aerojet. The court also found that no act or omission of Aerojet "proximately or otherwise" caused the deaths ; that Aerojet was not guilty of any negligence "active or affirmative or otherwise, so as to preclude its rights to indemnity."

The findings declare that Zelinsky breached its contractual

duty of care; that the accident resulted from this breach. Zelinsky does not attack the evidentiary bases for this declaration. Aside from the question whether Aerojet's own role in the accident bars indemnity, the findings fully support indemnification based upon Zelinsky's breach of an implied covenant to perform the work in a reasonably safe manner.

Zelinsky contends that the findings omit a material issue, namely, the breach or liability in consequence of which Aerojet made the settlements; that, for all that appears in the findings, Aerojet might have made the settlements as a volunteer; that, had such a finding been made, it would disclose settlements based upon Aerojet's independent liability for its own actionable negligence; that such negligence precludes Aerojet's recovery as an implied indemnitee.

In both the *Woolen* and *Dauer* actions the reviewing courts had discarded the notions of Aerojet's responsibility as a landowner to its invitee and as an "employer" bound to assure compliance with industrial safety orders. By a process of elimination, the only theory under which Aerojet might be directly liable to the heirs was that described in Restatement section 413. Aerojet settled not as a volunteer but under compulsion of its own potential liability for breach of the duty of care described in the Restatement rule. (*Great Western Furniture Co.* v. *Porter Corp., supra,* 238 Cal.App.2d at p. 512; *Safeway Stores, Inc.* v. *Massachusetts Bonding & Ins. Co.,* 202 Cal.App.2d 99, 115-116 [20 Cal.Rptr. 820]; *Pacific Tel. & Tel. Co.* v. *Pacific Gas & Elec. Co.,* 170 Cal.App.2d 387, 392 [338 P.2d 984].) ▮ Personal liability of the indemnitee does not preclude indemnification, since his legal responsibility for the injury is the very occasion for the claim of indemnity.

Having before it the same trial transcripts and exhibits which had prompted the appellate courts to find substantial evidence of Aerojet's violation of the rule articulated in the Restatement, the trial court in the indemnification proceeding could have found Aerojet guilty of the identical conduct, that is, that it had employed an independent contractor to do work which would create a special, recognizable danger calling for special precautions and had failed either to demand such precautions in its contract or to take such precautions in some other way. (See Rest. 2d Torts, § 413, com. b.) Since the heirs' alternative theories of liability had been rejected on appeal, that finding would have been the most adverse which

Aerojet might have suffered in this proceeding. ■ We thus reach the focal problem on appeal: Does Aerojet's failure to comply with the duty of care described in Restatement section 413 preclude its indemnification?

Whether the plaintiff's role in the injury precludes indemnity, according to many authorities, is a question of fact for the jury or fact finder. (See cases discussed in *Ralke Co.* v. *Esquire Bldg. Maintenance Co., supra,* 246 Cal.App.2d at pp. 144-145.) Taken literally, that view would confine the reviewing court to an inquiry into the presence of substantial evidence to justify the award. (Cf. *Safeway Stores, Inc.* v. *Massachusetts Bonding & Ins. Co., supra,* 202 Cal.App.2d at p. 106.) Once the physical events are clear or established by findings, the decision for or against indemnity involves characterization of the facts rather than truth finding. Possibly, then, the determination is one of law or of "mixed" law and fact. (See Jaffe, *Judicial Review: Question of Law,* 69 Harv.L.Rev. 239; Netterville, *Administrative "Questions of Law" and the Scope of Judicial Review in California,* 29 So.Cal.L.Rev. 434; Brown, *Fact and Law in Judicial Review,* 56 Harv.L.Rev. 899.) Without entering this thorny thicket, this appellate court believes itself obliged to review the trial court's application of legal standards to the facts at hand.

Following a dictum in *Weyerhaeuser S.S. Co.* v. *Nacirema Operating Co., supra,* 355 U.S. at page 569, some California decisions state that the distinction between passive and active negligence is inappropriate when the basis of indemnification is contractual. (*Great Western Furniture Co.* v. *Porter Corp., supra,* 238 Cal.App.2d at p. 516; *Cahill Bros., Inc.* v. *Clementina Co., supra,* 208 Cal.App.2d at p. 376.) Such statements do not mean that comparative responsibility is thrown to the winds. Other decisions hold an actively negligent contractor liable for indemnification of a passively negligent contractee. (*Ferrel* v. *Vegetable Oil Products Co.,* 247 Cal.App.2d 117, 123, 124-125 [55 Cal.Rptr. 589]; *Safeway Stores, Inc.* v. *Massachusetts Bonding & Ins. Co., supra,* 202 Cal.App.2d at p. 111; see also, *Harvey Machine Co.* v. *Hatzel & Buehler, Inc.,* 54 Cal.2d 445, 448 [6 Cal.Rptr. 284, 353 P.2d 924].) Aerojet's failure to demand precautions of Zelinsky was quite different in character from Zelinsky's negligence in the active conduct of the project. In the train of causative factors culminating in the accident, Areojet's omission was secondary and passive, while Zelinsky's was immediate and active. Another element

militating in Aerojet's favor is the fact that the peril was created by the contractor and did not precede his arrival on the scene.[2] Zelinsky's exclusive control of the work and the absence of Aerojet control are additional factors supporting indemnity. (*Ferrel* v. *Vegetable Oil Products Co., supra,* 247 Cal.App.2d at p. 124; also cases cited, 97 A.L.R.2d at p. 627.) Aerojet's justifiable reliance on Zelinsky's judgment and knowledge is another factor. (*De La Forest* v. *Yandle,* 171 Cal.App.2d 59, 61 [340 P.2d 52]; *Alisal Sanitary Dist.* v. *Kennedy, supra,* 180 Cal.App.2d at p. 79.)

Although Aerojet's liability to the Woolen and Dauer heirs stemmed from its personal negligence in failing to give directions or orders, yet—as between itself and Zelinsky—its negligence was imputed and constructive, that is, fastened upon it only by reason of the acts and omissions of the latter. There is some analogy here to a principal's right of indemnity against his negligent agent. (See *Herrero* v. *Atkinson,* 227 Cal.App.2d 69, 77 [38 Cal.Rptr. 490, 8 A.L.R.3d 629].) A cogent statement of the point is this: " 'Without multiplying instances, it is clear that the right of a person vicariously or secondarily liable for a tort to recover from one primarily liable has been universally recognized. But the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible.' " (*Alisal Sanitary Dist.* v. *Kennedy,* 180 Cal.App.2d at p. 75 [4 Cal.Rptr. 379], quoting from *Builders Supply Co.* v. *McCabe,* 366 Pa. 322, 327-328 [77 A.2d 368, 24 A.L.R.2d 319].)

The culpability contrast between indemnitee and indemnitor is much like that in *Ferrel* v. *Safway Steel Scaffolds,* 57 Cal.2d 651 [21 Cal.Rptr. 575, 371 P.2d 311], and *Ferrel* v. *Vegetable*

[2]See cases cited in Annotation, 97 A.L.R.2d at pages 628-629. Consistently, the Restatement of Restitutions, section 95, declares: "Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition."

*Oil Products Co., supra,* 247 Cal.App.2d 117. There, as in the *Woolen* case, the Supreme Court found substantial evidence of the plant owner's failure to demand precautions of its contractor as described in Restatement section 413, resulting in the injury of the contractor's employee. The plant owner then settled with the employee and sought indemnity from the employer. The appellate court then held that the negligent "inaction" of the plant owner did not bar its indemnification by the actively negligent contractor. (*Ferrel* v. *Vegetable Oil Products Co., supra,* 247 Cal.App.2d at p. 124.)

Had the trial court found Aerojet guilty of negligence in violating the duty described in Restatement section 413 and found this guilt to be the basis or reason for the settlements, those findings would not preclude indemnity. Zelinsky may not complain of the absence of findings which would have been adverse to it. (*Coronet Credit Corp.* v. *West Thrift Co.,* 244 Cal.App.2d 631, 648 [53 Cal.Rptr. 433]; *Pry Corp. of America* v. *Leach,* 177 Cal.App.2d 632, 637 [2 Cal.Rptr. 425].) The trial court correctly concluded that Aerojet's conduct relative to the accident did not bar indemnity.

Zelinsky invokes theories of judicial estoppel and collateral estoppel. As we understand its argument, Zelinsky is claiming that Aerojet cannot consistently deny its "independent" negligence after acceding to that negligence in making the settlements for which it claims indemnity. As we have noted, the indemnitee's direct liability to the injured person or his survivors is the very occasion for indemnification. The settlements do not necessarily imply—nor do they establish by collateral estoppel—that Aerojet's negligence was the kind which precludes indemnity. (*Ralke Co.* v. *Esquire Bldg. Maintenance Co., supra,* 246 Cal.App.2d at p. 145; *Baldwin Contracting Co.* v. *Winston Steel Works, Inc.,* 236 Cal.App.2d 565, 571-572 [46 Cal.Rptr. 421].)

Aerojet's action for indemnification from Zelinsky was initiated by the filing of a cross-complaint in the *Woolen* litigation in October 1962. In its opening brief on appeal Zelinsky argued that the indemnity action was barred by limitations, having been filed more than four years after the 1956 accident. In its closing brief Zelinsky concedes that two California decisions, *Vegetable Oil Products Co.* v. *Superior Court, supra,* 213 Cal.App.2d at page 257, and *De La Forest* v. *Yandle, supra,* 171 Cal.App.2d at page 62, establish the rule that the period of limitations on the indemnity claim begins when the

claimant settles with the injured party. Although urged to disagree with these two decisions, we discern no need to do so.

Judgment affirmed.

Pierce, P. J., and Regan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 17, 1967.